ROBERT WILLIAM BROOKS, III, Plaintiff-Appellant, *v.* THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Defendant-Appellee.

Fourth District   No. 16123

Opinion filed November 26, 1980.

Marvin Gerstein, of Champaign, for appellant.

Charles L. Palmer, of Franklin, Flynn & Palmer, of Champaign (Franklin, Flynn & Palmer, James J. Costello, and Timothy Madigan, of counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The plaintiff initiated a proceeding in the circuit court to have certain parking regulations at the University of Illinois declared to be invalid. Plaintiff also sought to enjoin the enforcement of the regulation and the collection of fines. The trial court denied the injunctive relief and in a memorandum opinion and order entered judgment for the defendant in the declaratory judgment proceeding.

The facts giving rise to the action are not in dispute. While a student and part-time employee of the university, plaintiff accumulated approximately 66 parking violations upon the property of the university. The

fines assessed for those violations have not been paid, and the university intends to withhold an amount equal to the fines from plaintiff's salary. The withholding is pursuant to plaintiff's employment contract which provides in relevant part:

> "I authorize the University of Illinois to deliver my paycheck in the manner indicated above, and agree that the University may withhold a sufficient amount to cover obligations which may be due or become due the University whether by contract, lease, under its rules and regulations, or otherwise."

The parking regulations which plaintiff has violated were propounded by the University of Illinois Board of Trustees through the Illinois Division of Campus Parking and Transportation. That division, in conjunction with the University police, issues tickets. Fines are established by the Division of Campus Parking, again with authority given to it by the Board.

Plaintiff makes two arguments concerning the validity of the fines here at issue. One concerns the power and function of the University of Illinois Board of Trustees and is dealt with below. In the second, plaintiff argues that the assessment of the fines and the withholding from his salary contravene his right to due process of law.

■■ We find that the university is expressly authorized to withhold monies from an employee by the State Salary and Annuity Withholding Act (Ill. Rev. Stat. 1979, ch. 127, par. 354). As required by the statute, plaintiff agreed to the withholding in his employment contract.

■■ Plaintiff also argues that the assessment of the fines was without notice and the opportunity to be heard. However, parking tickets may be appealed within the university structure, according to the published Student Automobile Regulations, and plaintiff failed to avail himself of his opportunity to be heard. That failure constitutes a waiver of the right to be heard. Due process was not denied—it was waived. (*First Lien Co. v. Markle* (1964), 31 Ill. 2d 431, 202 N.E.2d 26.) The appeal procedure itself does not deny plaintiff due process of law, as due process is a flexible standard, satisfied by a form of procedure that is suitable and proper to the nature of the determination to be made. (*Waupoose v. Kusper* (1972), 8 Ill. App. 3d 668, 290 N.E.2d 903.) We find the process here, requiring notification in person within five school days of the notice of parking violation, to satisfy this standard.

■■ Finally, plaintiff argues that the Board of Trustees is without legal authority to establish parking meter controls and regulations on the campus of the university. We hold that it has such authority

As both parties recognize, the principal decision regarding the legal authority and corporate power of the University of Illinois and the Board of Trustees which governs it is *People ex rel. Board of Trustees v. Barrett*

(1943), 382 Ill. 321, 46 N.E.2d 951. In that case the Attorney General sought to deny the Board power to employ counsel of its own choosing. In discussing the nature of the public corporation created by the legislature to operate the University of Illinois, our supreme court said:

> "The only power the State can exercise with reference to the administration and operation of the university is by limiting or withholding appropriations, or by changing the statute.
>
> It is a public corporation, created for the specific purpose of the operation and administration of the university. As such, it may exercise all corporate powers necessary to perform the functions for which it was created." (382 Ill. 321, 342, 46 N.E.2d 951, 962.)

The rationale of the organization of the University of Illinois as elucidated by the court was derived from the statute itself.

The University of Illinois Board of Trustees was created by the legislature in 1867 as "a body corporate and politic." (Ill. Rev. Stat. 1979, ch. 144, par. 22.) That section describes the power of the Board, in pertinent part, as including the "power to contract and be contracted with, to sue and be sued, * * * to plead and be impleaded, to acquire, hold, and convey real and personal property; to have and use a common seal, and to alter the same at pleasure; to make and establish by-laws, and to alter or repeal the same as they shall deem necessary, for the management or government, in all of its various departments and relations, of the Illinois Industrial University, * * * ." The court reasoned in *Barrett* that "[a]s long as the present statute is in force, the State has committed to the corporate entity the absolute power to do everything necessary in the management, operation and administration of the university." 382 Ill. 321, 341, 46 N.E.2d 951, 961.

Yet litigation continues to this day seeking to challenge the Board's powers to do just that. It is clear from the statute and from *Barrett* that the Board has the authority to perform any act in furtherance of the management of the university.

In *Turkovich v. Board of Trustees* (1957), 11 Ill. 2d 460, 143 N.E.2d 229, the question presented was whether the Board had the authority to construct and operate an educational television station. The supreme court held that given the nature of scientific education and the scientific advancements made by the nation's universities, the operation of an educational television station was essential to both the development of that art and the education of the students of the university in the act.

In *Tanner v. Board of Trustees* (1977), 48 Ill. App. 3d 680, 363 N.E.2d 208, the plaintiff sought money damages for the failure of the university

to award him a degree. In ruling against the plaintiff on other grounds, we held that the university has discretion in the awarding of degrees to students who participate in its curricula.

While not legion, other cases have touched in more indirect manner on the powers of the Board. In *Elliott v. University of Illinois* (1936), 365 Ill. 338, 6 N.E.2d 647, the university's power, authorized by the legislature, to grant specific degree was upheld. In *North v. Board of Trustees* (1891), 137 Ill. 296, 27 N.E. 54, the court held that it was within the power of the Board to develop rules and regulations such as required chapel attendance and to expel students for the failure to comply with such rules and regulations.

The thrust of the cases above cited is that the Board of Trustees has the authority to make those decisions and those rules and regulations which relate to the attainment of the purpose of the university is quite obviously the education of its students. To question, then, whether the Board of Trustees has the authority to establish parking regulations requires, as in *Turkovich*, an analysis of how such regulations relate to the educational program of the University.

It takes not a great deal of experience nor imagination to picture the chaos of a large university without regulations designed, as the ones at issue are, to keep order on the streets and other property of the university. The order thus created by the regulations must certainly be considered conducive to the learning and labors for which the university has been created. On that basis, then, the regulations at issue pertain to the purposes of the university and are therefore valid.

We hold that the Board of Trustees of the University of Illinois has the authority to do any act or make any rule which properly relates to either the provision of an education to its students or the governance of its jurisdiction. This authority is broad.

It arises by direct grant and by necessary implication. As was stated in *Barrett*, the university has the authority to exercise all corporate powers necessary to perform the functions for which it was created, measured by its role in contemporary society. With no strain whatsoever, that includes the power to issue and enforce parking regulations.

The judgment is affirmed.

MILLS, P. J., and WEBBER, J., concur.