2024 IL App (1st) 230765-U

No. 1-23-0765

Order filed July 19, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| WILLIAM PAYNE and TINA PAYNE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 L 11998 |
| | ) | |
| PNC BANK, NATIONAL ASSOCIATION; ALAN J. | ) | |
| LAVALLE; and FRANK R. SCHIRO, | ) | Honorable |
| | ) | Catherine A. Schneider, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's dismissal of plaintiffs' amended complaint with prejudice where they failed to sufficiently state their causes of action. Additionally, plaintiffs forfeited their due process violation claim regarding their inability to exercise a substitution of judge.

¶ 2    In late 2004 and early 2005, defendants, Frank R. Schiro and Alan J. LaValle, respectively, performed appraisals of the residential property owned by plaintiffs, William and Tina Payne, which the predecessor to defendant, PNC Bank, National Association (PNC Bank), ordered in

connection with plaintiffs' application for a loan to perform significant renovations to their property. PNC Bank's predecessor subsequently approved the loan, and plaintiffs performed renovations to their property. In 2021, plaintiffs sued PNC Bank, LaValle and Schiro (collectively, defendants) in the circuit court, alleging that PNC Bank directed LaValle and Schiro to fraudulently inflate the appraised value of the property to obtain plaintiffs' business. On defendants' motions, the circuit court dismissed with prejudice plaintiffs' amended complaint, which raised causes of action for common law fraud, civil conspiracy to commit fraud, a violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2020)), and negligence.

¶ 3    Plaintiffs now appeal that dismissal and contend that the circuit court erred by dismissing their amended complaint where they sufficiently stated their causes of action and the causes of action were filed within the applicable statutes of limitations due to equitable tolling. In addition, plaintiffs contend that they were deprived of due process when a new judge became assigned to their case without notice, which prevented them from exercising a substitution of judge as of right. For the reasons that follow, we affirm the circuit court's dismissal.

¶ 4                                  I. BACKGROUND

¶ 5                        A. The Property and Its Appraised Value

¶ 6    In 1996, plaintiffs purchased their residence, which is located in Flossmoor, Illinois. Eight years later, they sought to renovate their residence and applied for a loan from National City Bank, which was later purchased by PNC Bank (hereinafter referred to as PNC Bank). According to plaintiffs' operative amended complaint, they had two options in renovating their residence. One plan involved adding a second floor, and the other plan involved simply adding rooms on the first floor. In connection with plaintiffs' application, PNC Bank obtained appraisals. In November

2004, Schiro appraised the value of the property at $1.8 million, subject to a second-floor addition. Two months later, LaValle appraised the value of the property at $1.8 million, also subject to a second-floor addition. In April 2005, plaintiffs obtained a new primary mortgage from PNC Bank in the amount of $1.19 million and a second mortgage loan for a line of credit not to exceed $250,000. In March 2007, plaintiffs increased the amount financed under the primary mortgage to $1.5 million. Between 2005-2007, according to plaintiffs' amended complaint, they "carried out and completed the renovations."

¶ 7 According to plaintiffs' amended complaint, at various points beginning in approximately July 2010, though the exact dates are unidentified, PNC Bank "refused to rectify or modify" their mortgage. Plaintiffs asserted that, even though they "tried several times to refinance out of [their] mortgage, *** they never got beyond initial interviews regarding refinancing the property" due to their mortgage indebtedness being greater than the value of the property. Ultimately, in November 2017, plaintiffs attempted to refinance their mortgage through Albert McCormick Jr. At that time, he informed plaintiffs that refinancing was nearly impossible because their property was valued at approximately $500,000. During that meeting, McCormick Jr. told plaintiffs that "he did not understand how [$1.8 million] could have been loaned on the subject property in 2007." In January 2018, during another meeting with McCormick Jr., plaintiffs allegedly learned that LaValle's appraisal violated uniform standards of appraisal. Later that year, another appraiser valued plaintiffs' residence at $600,000.

¶ 8                                    B. The Litigation

¶ 9 Initially, in March 2020, plaintiffs filed suit in federal court against defendants, asserting a federal Credit Repair Organizations Act (CROA) claim (15 U.S.C. § 1679 *et seq.* (2018)) as well state law causes of action for common law fraud, civil conspiracy to commit fraud, a violation of

the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2020)), and negligence. Eventually, plaintiffs filed a second amended complaint against defendants asserting those five causes of actions.[1] In June 2021, on defendants' motions to dismiss, the federal court found that plaintiffs failed to state a CROA claim against PNC Bank, and while they stated CROA claims against LaValle and Schiro, the claims were barred by the applicable statute of limitations. Consequently, the federal court dismissed plaintiffs' CROA claims and declined to exercise supplemental jurisdiction over the Illinois state law claims.

¶ 10    Five months later, plaintiffs filed a four-count complaint against defendants in the circuit court, asserting causes of action for common law fraud, civil conspiracy to commit fraud, a violation of the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2020)), and negligence. On defendants' motions, Judge James E. Snyder dismissed the complaint without prejudice.

¶ 11    In July 2022, plaintiffs filed the operative four-count amended complaint. Count I alleged common law fraud, Count II alleged a civil conspiracy to commit fraud, and Count III alleged a violation of the Consumer Fraud Act (*id.*) against all three defendants. Lastly, Count IV, misnumbered as Count V, alleged negligence against PNC Bank. The amended complaint generally alleged that PNC Bank and its agents, LaValle and Schiro, conspired together to fraudulently appraise the value of plaintiffs' property by failing to conform their appraisals to universal appraisal standards so that PNC Bank could acquire plaintiffs' business. And further, the amended complaint claimed that PNC Bank directed LaValle and Schiro to appraise the property, as renovated, for at least $1.8 million, which was the amount necessary to approve plaintiffs' loan.

---

[1] Plaintiffs' federal complaints are not included in the record on appeal, but we may take judicial notice of them, as federal court filings are public records. See *Seiden Law Group, P.C. v. Segal*, 2021 IL App (1st) 200877, ¶ 5 n.1.

According to the amended complaint, LaValle and Schiro agreed to conspire with PNC Bank because the bank represented a significant share of their appraisal businesses. The amended complaint also claimed that, at the very least, PNC Bank acted negligently in failing to discover that the appraisals were fraudulent. Recognizing that their claims were potentially barred by the applicable statutes of limitations, plaintiffs asserted two dates of discovery of their causes of action. First, they claimed that they "did not begin to discover that they had" causes of action "until they met with McCormick [Jr.] and made attempts to refinance their home in November 2017." Later, in their amended complaint, plaintiffs alleged that January 2018—when they had "a post-holiday follow up meeting" with McCormick Jr. "to refinance their home" and discovered LaValle's appraisal violated uniform appraisal practices—was their date of discovery for statute of limitations purposes. In addition, plaintiffs claimed that each defendant had fraudulently concealed the causes of action from them.

¶ 12    Thereafter, defendants filed individual motions to dismiss under both section 2-615 and section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619(a)(5) (West 2020)). They argued that plaintiffs failed to sufficiently state their causes of actions and their claims were time-barred by the relevant statutes of limitations. Following briefing, Judge Snyder entered an order rescheduling a September 28, 2022, hearing set on the motions to November 3, 2022. In the order, Judge Snyder noted that a written ruling could be entered in the matter without a hearing. The record on appeal does not indicate what occurred on November 3, 2022.

¶ 13    In March 2023, Judge Catherine A. Schneider, who had taken over the case for Judge Snyder, entered a written order resolving the motions. On the statutes of limitations issues, Judge Schneider rejected plaintiffs' argument that the statutes had been tolled by defendants' alleged fraudulent concealment of the causes of action because plaintiffs could not identify an affirmative

act committed by defendants. However, Judge Schneider declined ruling on the applicability of the discovery rule to delay the commencement of the limitations periods and instead concluded that plaintiffs failed to sufficiently state any of their causes of action. Consequently, Judge Schneider granted defendants' motions to dismiss.

¶ 14    This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    Plaintiffs contend that the circuit court erred by dismissing their amended complaint where they sufficiently state causes of action for common law fraud, civil conspiracy to commit fraud and a violation of the Consumer Fraud Act against all three defendants, and a cause of action for negligence against PNC Bank, and all four claims were filed within the applicable statutes of limitations periods due to equitable tolling. Additionally, plaintiffs contend that they were deprived of due process when Judge Schneider became assigned to their case without notice, which prevented them from exercising a substitution of judge as of right.

¶ 17                            A. Section 2-615 Dismissal

¶ 18    We begin with the circuit court's basis for dismissal, which was pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). A section 2-615 motion to dismiss "challenges the legal sufficiency of a complaint based on defects apparent on its face." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). The question on review from such a dismissal "is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to establish a cause of action upon which relief may be granted." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). Our review of the circuit court's dismissal is *de novo*. *Henderson Square Condominium Association v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 61.

¶ 19    In Count I of plaintiffs' amended complaint, they bring a cause of action for common law fraud. In order to plead a cause of action for common law fraud, a plaintiff must allege "(i) a false statement of material fact, (ii) which the party making the statement knew or believed to be false, (iii) with the intention to induce the plaintiff to act (iv) and that the plaintiff reasonably relied on the false statement, (v) resulting in damages to the plaintiff." *Ash v. PSP Distribution, LLC*, 2023 IL App (1st) 220151, ¶ 22. "A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496-97 (1996).

¶ 20    In the instant case, to support their assertion that defendants knew the appraisals were false or believed the appraisals to be false, plaintiffs allege in their amended complaint that PNC Bank had other information from Schiro and LaValle from which it knew or should have known the appraisals were false. Plaintiffs also allege that defendants knew the appraised values were inflated or false, or were reckless with respect to their truth or falsity. But these allegations are simply conclusory assertions that defendants knew, or believed, the appraisals were false. See *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶ 28 (asserting that "[c]onclusory allegations are insufficient" to state a claim for fraud). Plaintiffs further rely on their allegations that Schiro and LaValle violated uniform standards of appraisal by not using suitable comparable sales. But the fact that Schiro and LaValle may have used homes that were not sufficiently comparable does not mean they knew their appraisals were false even when construing this allegation in the light most favorable to plaintiffs with all reasonable inferences in their favor. Additionally, although plaintiffs allege in their amended complaint that defendants agreed in advance of the appraisals being

performed to a minimum appraised amount or a range of appraised amounts, this allegation lacks the specificity required for pleading fraud. While certainly there is a disparity of knowledge between plaintiffs and defendants in this case, as often occurs in fraud cases, a sufficiently pled fraud claim must include more than just a bare assertion that defendants agreed to misrepresent the value of plaintiffs' property. See *id.*

¶ 21    At most, plaintiffs' amended complaint alleges that Schiro and LaValle violated uniform standards of appraisal by using inapposite comparable sales. But there are no factual allegations that Schiro and LaValle knowingly made a false statement. It is well established that Illinois is a fact-pleading jurisdiction. *Doe v. Coe*, 2019 IL 123521, ¶ 32. "While the plaintiff is not required to set forth evidence in the complaint [citation], the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action [citation], not simply conclusions." *Marshall*, 222 Ill. 2d at 429-30. Here, plaintiffs only plead conclusory allegations that defendants knew, or believed, the appraisals were false. That is insufficient to plead fraud.

¶ 22    However, even if we could conclude that plaintiffs sufficiently plead the first four elements of fraud, including that defendants knew, or believed, the appraisals were false, plaintiffs' allegation of resulting damages is lacking. In a fraud claim, "[a]bsolute certainty about the amount of damages is not necessary, but damages may not be predicated upon mere speculation, and the plaintiff must show a *basis* for computing damages with a fair degree of probability." (Emphasis in original.) *Castlerigg Master Investments, Ltd. v. AbbVie, Inc.*, 2021 IL App (1st) 200527, ¶ 23. In their amended complaint, plaintiffs claim that they had been damaged by defendants' alleged actions because they became trapped in a $1.4 million mortgage on a home that last appraised for $870,000. This, in turn, according to plaintiffs' amended complaint, resulted in their mortgage being underwater, and rendered them unable to refinance the property or unable to sell the property

without court intervention. While plaintiffs are not required to calculate their damages to sufficiently plead fraud, and we do not doubt their mortgage is underwater, they fail to provide a basis for computing their damages with a fair degree of probability. See *id.* ¶¶ 23, 25 (dismissing a plaintiff's fraud claim under section 2-615 where it "failed to adequately allege the element of damages" because it did not "provide a *method for calculating the damages* it sought") (Emphasis in original.) Indeed, when asked during oral argument about their alleged damages, plaintiffs focused on equitable remedies such as reformation and could not articulate any method for calculating the damages they allegedly suffered. Consequently, plaintiffs' allegations are insufficient to plead a fraud claim against defendants, and the circuit court properly dismissed Count I of plaintiffs' amended complaint.

¶ 23 Next, we turn to Count II of plaintiffs' amended complaint, where they raise a cause of action for a civil conspiracy to commit fraud. In order to sufficiently state a claim for a civil conspiracy, a plaintiff must plead "(1) the existence of an agreement between two or more persons (2) to participate in an unlawful act or a lawful act in an unlawful manner, (3) that an overt act was performed by one of the parties pursuant to and in furtherance of a common scheme, and (4) an injury caused by the unlawful overt act." *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 20. "The essence of a conspiracy claim is not the agreement but rather the tortious acts performed in furtherance of the agreement." *Tri-Plex Technical Services, Ltd. v. Jon-Don, LLC*, 2024 IL 129183, ¶ 41. "It necessarily follows, therefore, that a conspiracy is not an independent tort and, where a plaintiff fails to state an independent cause of action underlying the conspiracy allegations, the claim for conspiracy also fails." *Id.* Because plaintiffs' allegations are insufficient to plead a fraud claim against defendants, they cannot sufficiently plead a claim of a civil conspiracy to

commit fraud against defendants. See *id.* Consequently, the circuit court properly dismissed Count II of plaintiffs' amended complaint.

¶ 24    We now turn to Count III of plaintiffs' amended complaint, where they raise a cause of action for a violation of the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2020)). In order to sufficiently state a claim for a violation of the Consumer Fraud Act, a plaintiff must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002). As compared to a common law fraud claim, "[t]he Consumer Fraud Act expands consumers' rights *** and provides broader protection." *Ash v. PSP Distribution, LLC*, 2023 IL App (1st) 220151, ¶ 24. To this end, in contrast to a common law fraud claim, for the Consumer Fraud Act, "the legislature eliminated the element of intent" (*Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1041 (1992)), resulting in negligent and innocent misrepresentations being actionable. *Griffin v. Universal Casualty Co.*, 274 Ill. App. 3d 1056, 1065 (1995).

¶ 25    Although plaintiffs' allegations are insufficient to plead fraud, in particular that defendants knowingly made false statements, that does not necessarily mean that plaintiffs fail to sufficiently allege a violation of the Consumer Fraud Act given the lack of *scienter* required to state a Consumer Fraud Act claim. See *Aliano v. Sears, Roebuck & Co.*, 2015 IL App (1st) 143367, ¶ 5 (providing that, "in order to recover based upon a misrepresentation, a plaintiff need not establish *scienter* as even innocent misrepresentations may be actionable under the Consumer Fraud Act"). However, resolving this aspect of plaintiffs' Consumer Fraud Act claim is unnecessary as they fail to adequately plead actual damages in support of their Consumer Fraud Act claim.

¶ 26    The Consumer Fraud Act allows "[a]ny person who suffers actual damage as a result of a violation of [the statute]" to bring an action against the person who committed the violation. 815 ILCS 505/10a(a) (West 2020). The statute "provides remedies for purely economic injuries." *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 41. " 'Actual damage' in this context means that [the plaintiff] must have suffered actual pecuniary loss." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (applying the Consumer Fraud Act). The "[a]ctual damages must be calculable and 'measured by the plaintiff's loss.' " *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402 (2009) (quoting *City of Chicago v. Michigan Beach Housing Cooperative*, 297 Ill. App. 3d 317, 326 (1998)).

¶ 27    Although, according to plaintiffs' amended complaint, they allegedly cannot refinance their mortgage or sell their property without court intervention due to their mortgage being underwater, that does not mean they have suffered an economic injury for which damages could make them whole again, especially given that they actually benefited in part from PNC Bank's loan as they were able to add a second story to their residence because of it. See *Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*, 2016 IL App (2d) 151053, ¶ 22 ("The purpose of awarding damages to a consumer-fraud victim is not to punish the defendant or bestow a windfall upon the plaintiff, but rather to make the plaintiff whole."). And indeed, plaintiffs do not plead specific, economic damages or a basis to calculate them, but rather rely on conclusory assertions that they sustained actual damages. See *Flores*, 2023 IL App (1st) 230140, ¶ 41 (asserting that "[t]he failure to allege specific economic damages precludes a claim brought under the Consumer Fraud Act").

¶ 28    Additionally, although the Consumer Fraud Act does allow the circuit court to award "any other relief which [it] deems proper" in addition to "actual economic damages" (815 ILCS

505/10a(a) (West 2020)), a plaintiff's entitlement to equitable relief, such as reformation, cannot arise absent actual damages. See *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 859 (1995). Consequently, plaintiffs' allegations are insufficient to plead a claim for a violation of the Consumer Fraud Act against defendants, and the circuit court properly dismissed Count III of plaintiffs' amended complaint.

¶ 29    We now turn to Count IV of plaintiffs' amended complaint, where they raise a cause of action for negligence against PNC Bank. "To state a legally sufficient claim of negligence, the complaint must allege facts establishing the existence of a duty of care owed by the defendants to the plaintiffs, a breach of that duty, and an injury proximately caused by that breach." *Iseberg v. Gross*, 227 Ill. 2d 78, 86-87 (2007).

¶ 30    In alleging that PNC Bank was negligent in their amended complaint, plaintiffs assert that it had "a general duty of care toward" them in providing the loan to complete the renovations of their property and "a duty to [them] to take precautions against creating unreasonable risk of injury from foreseen and foreseeable events," including plaintiffs being unable "to refinance the mortgage due to the fraudulent appraisals." However, "a financial institution, acting within its conventional role as a lender of money, owes no duty of care to the borrower when preparing an appraisal of the borrower's collateral." *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 365 (1995). "To impose upon the lender a duty of care in preparing an appraisal done solely for the lender's benefit would drastically alter the risk undertaken by the lender." *Id.* Consequently, because PNC Bank owed no duty to plaintiffs, their allegations are insufficient to plead a claim of negligence against PNC Bank, and the circuit court properly dismissed Count IV of plaintiffs' amended complaint.

¶ 31    Briefly, we further note that, even if plaintiffs did sufficiently state a cause of action for negligence against PNC Bank, the claim was undeniably time-barred. The statute of limitations for a negligence claim is two years (*Catlett v. Novak*, 116 Ill. 2d 63, 64-65 (1987)), and the discovery rule applies to such a claim. *Castello v. Kalis*, 352 Ill. App. 3d 736, 744 (2004). Assuming *arguendo* that January 2018—when plaintiffs allegedly learned that LaValle's appraisal violated uniform appraisal practices—was the date of accrual for statute of limitations purposes for their various causes of action, as they assert in their amended complaint, plaintiffs did not file suit until March 2020 in federal court. Based on plaintiffs' alleged date of discovery of January 2018, they had until January 2020 to initiate their negligence claim. By initiating that claim in March 2020, the two-year statute of limitations for such a claim had already expired. Consequently, the circuit court would have been justified in dismissing plaintiffs' negligence claim for not being commenced within the time period required by law under section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2020)), and we could have affirmed the dismissal of Count IV on that basis. See *Masters v. Murphy*, 2020 IL App (1st) 190908, ¶ 9 (stating that the appellate court "may affirm the [circuit] court's dismissal based upon any grounds supported by the record").

¶ 32    In addition to finding that the circuit court properly dismissed all four counts of plaintiffs' amended complaint, based on the record, we have no choice but to find that the court's dismissal being made with prejudice was also appropriate. It is true that the court should dismiss a complaint with prejudice "only where it is clearly apparent that the plaintiffs can prove no set of facts entitling recovery." *Norabuena v. Medtronic, Inc.*, 2017 IL App (1st) 162928, ¶ 39. And, as a general matter, the court should liberally allow amendments to pleadings. *Addison v. Distinctive Homes, Ltd.*, 359 Ill. App. 3d 997, 1003 (2005). But, in their briefing, plaintiffs have not argued that the circuit court's dismissal being made with prejudice was in error, and there is no evidence in the

record that they ever sought the ability to file a second amended complaint. See *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 435 (2004) ("The general rule is that where a trial court dismisses a complaint and plaintiff does not seek leave to amend, the cause of action must stand or fall on the sufficiency of the stricken pleading."); *Super Mix of Wisconsin, Inc. v. National Gas Pipeline Co. of America, LLC*, 2020 IL App (2d) 190034, ¶ 55 (finding that plaintiffs had "forfeited any claim that the dismissal with prejudice was error" where they did not "propose[] an amendment to the complaint"). Consequently, the court's dismissal with prejudice of all four counts of plaintiffs' amended complaint under section 2-615 was proper.

¶ 33                                 C. Due Process Claim

¶ 34    Lastly, plaintiffs contend that they were deprived of due process when Judge Schneider took the case over from Judge Snyder without notice, which prevented them from exercising a substitution of judge as of right. A litigant is entitled to one substitution of judge as of right when he or she "timely exercises" the right. 735 ILCS 5/2-1001(a)(2) (West 2020). When the litigant properly moves for a substitution as of right, the "right is absolute, and the circuit court has no discretion to deny the motion." *Bowman v. Ottney*, 2015 IL 119000, ¶ 17.

¶ 35    In the instant case, however, plaintiffs failed to raise their due process claim in the circuit court. "The general rule is that it is the duty of a person, whenever he regards his constitutional rights to have been invaded, to raise an objection at the earliest fair opportunity, and the failure to do so amounts to a [forfeiture] of the right." *Feldman v. Board of Trustees of Southern Illinois University*, 108 Ill. App. 3d 1127, 1134 (1982). Nothing prevented plaintiffs from bringing a postjudgment motion, such as a motion to vacate, in the circuit court and raising this argument after Judge Schneider entered the written order dismissing their amended complaint. Although Judge Schneider might have denied such a postjudgment motion, it would have preserved

plaintiffs' argument now on appeal. But because plaintiffs failed to raise the issue first in the circuit court, they have forfeited their due process claim on appeal. See *id.*

¶ 36   Nevertheless, plaintiffs argue that they cannot forfeit this contention of error. Relying on *People v. Stoecker*, 2020 IL 124807, ¶ 23, they claim the error was structural and cannot be disregarded. However, the structural error doctrine is generally a criminal law concept. "The United States Supreme Court has explained that '[t]he purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial.' " *People v. Jackson*, 2022 IL 127256, ¶ 29 (quoting *Weaver v. Massachusetts*, 582 U.S. 286, 294-95 (2017)); see also *People v. Averett*, 237 Ill. 2d 1, 12-13 (2010) ("An error is typically designated as 'structural' and requiring automatic reversal only if it necessarily renders a criminal trial fundamentally unfair or unreliable in determining guilt or innocence."). Although the appellate court has recognized structural error in the civil context in cases involving judicial disqualification based on bias (see *Naden v. Firefighters' Pension Fund of Sugar Grove Fire Protection District*, 2017 IL App (2d) 160698, ¶ 11), there have been no allegations of bias in this case. Moreover, plaintiffs have cited no decisions from Illinois applying the structural error doctrine to the issue at hand. Consequently, plaintiffs have forfeited their due process claim on appeal.

¶ 37                                    III. CONCLUSION

¶ 38   For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 39   Affirmed.